UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FREDERICK MARRIOTT,

Plaintiff,

-v- 6:24-CV-671 (DNH/CBF)

XTREME AUTO RECOVERY, INC; VILLAGE OF WHITESBORO; and JEFFREY KOPEC, Individually and in his Official Capacity;

Defendants,

-and-

XTREME AUTO RECOVERY, INC;

Cross-Claimant,

-v-

JEFFREY KOPEC, Individually and in his Official Capacity; and VILLAGE OF WHITESBORO;

Cross-Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HILLER COMERFORD INJURY & DISABILITY LAW<br>Attorney for Plaintiff<br>6000 North Bailey Avenue, | KENNETH HILLER, ESQ. |

Suite 1a
Amherst, NY 14226

THE ANDREWS FIRM
Attorney for Plaintiff
43 Court Street, Suite 810
Buffalo, NY 14202

SETH J. ANDREWS, ESQ.

PILLINGER MILLER
TARALLO, LLP
Attorneys for Defendant/Cross-Claimant Xtreme Auto Recovery, Inc.
126 North Salina St., Suite 215
Syracuse, NY 13202

JACQUELINE R. SOBOTTA, ESQ.
JEFFREY D. SCHULMAN, ESQ.

BAILEY, JOHNSON,
& PECK, P.C.
Attorneys for Defendants/Cross-Defendants Jeffrey Kopec and Village of Whitesboro
5 Pine West Plaza, Suite 507
Washington Avenue Extension
Albany, NY 1550

CRYSTAL R. PECK, ESQ.
JOHN W. BAILEY, ESQ.

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

This is a debt collection matter. On May 16, 2024, plaintiff Frederick Marriott ("Marriott" or "plaintiff") filed a five-count civil action against defendants Xtreme Auto Services, Inc ("Xtreme"), the Village of Whitesboro (the "Village"), and Jeffrey Kopec ("Sgt. Kopec") in both his official and

individual capacities (together the "Village Defendants") (all collectively, the "defendants"). Dkt. No. 1.

Marriott brings claims against the Village Defendants pursuant to 42 U.S.C. § 1983 ("§ 1983") for violations of his Fourth, Fifth and Fourteenth Amendment rights under the U.S. Constitution (Counts I and II) and for conspiring to violate those same constitutional rights (Count III). *Id.* Plaintiff also asserts claims against Xtreme for violations of both the Fair Debt Collection Procedures Act , 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count IV) and section § 9-609 of New York's Uniform Commercial Code ("UCC") (Count V). *Id.* On August 30, 2024, the Village Defendants filed an answer. Dkt. No. 15. Thereafter, on October 3, 2024, Xtreme filed an answer along with a crossclaim against the Village Defendants asserting that they are solely liable to plaintiff for any injuries suffered and that they failed to insure Xtreme from liability despite being contractually obliged to do so.[1] Dkt. No. 20 at ¶¶ 68–71. The Village Defendants then filed an answer to Xtreme's crossclaims denying them in their entirety. Dkt. No. 22. The parties proceeded to discovery, which was completed on or before September 15, 2025. Dkt. No. 36.

---

[1] The counterclaims were not discussed in the parties' motion papers and will not be addressed in this decision.

On November 18, 2025, Xtreme moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Dkt. Nos. 42–43. On November 18, 2025, the Village Defendants also moved for summary judgment.[2] Dkt. No. 46. The motions have been fully briefed and will be considered on the basis of the parties' submissions and without oral argument. Dkt. Nos. 42–43, 46, 49–52.

## II. BACKGROUND

The following section was developed from a review and comparison of the parties' respective Local Rule 56.1 statements along with the underlying records. *Compare* Xtreme's Facts, Dkt. No. 43, *with* Pl.'s Facts, Dkt. No. 49-11; *see generally* Dkt. Nos. 42–43, 49; *Compare* Village Defendants' Facts, Dkt. No. 46–15, *with* Pl.'s Facts, Dkt. No. 51–9; *see generally* Dkt. Nos 46, 51. Where the fact disputes identified by plaintiff pertain to either the characterization of defendants' statements or to the findings recorded in the materials cited, the following fact section is instead supported by direct citations to the relevant portion(s) of the record. In other cases, the record is cited directly to better describe relevant facts or issues in dispute. The following factual background has been divided into two sections corresponding to the defendants' respective motions.

---

[2] The Village Defendants' motion does not address Xtreme's crossclaims, and the state of those claims in light of resolving defendants' respective summary judgement motions will be discussed further *infra*.

### A. Xtreme's Motion

The dispute between plaintiff and Xtreme arises from a vehicle repossession. On May 16, 2023, Nathan Powers ("Powers"), a repossession agent working on Xtreme's behalf, arrived at plaintiff's business in Whitesboro, New York to repossess Marriott's 2016 Chevrolet Silverado, which was located in a parking lot adjacent to plaintiff's business. Pl.'s Facts ¶ 1; Xtreme's Ex. B, Dkt. No. 42-2 at ¶ 16. The truck was to be repossessed because plaintiff defaulted on a loan agreement he entered into with non-party Five-Star Bank ("Five Star"). Pl.'s Facts ¶¶ 2–3; Installment Contract, Xtreme's Ex. K, Dkt. No. 42-11. At the time of repossession, plaintiff was aware he was in default. Pl.'s Facts ¶ 3; Marriott Dep., Xtreme Ex. G, Dkt. No. 42-7 at 17:5–8 ("Q: Now, at the time of the May 16, 2023 repossession were you still delinquent in any payments you owed to the bank? A: I believe one."); *Id*. at 57:7–9 ("Q: Were you are that the payment was -- that you were delinquent on the payment? A: Absolutely.")[3]

On May 16, 2023, Five Star provided Xtreme with an "Assignment for Repossession" authorizing them to act as Five Star's agent "to collect or repossess, on sight, the above collateral." Pl.'s Facts ¶ 4; Five Star Assignment for Possession, Xtreme's Ex. A, Dkt. No. 42-1. The specified

[3] Pagination corresponds to CM/ECF headers.

collateral was plaintiff's Chevrolet Silverado. *Id.* And on that morning, plaintiff's wife ("Kristi") observed an Xtreme tow truck "backing to the Silverado" as she watched from a window inside of plaintiff's business. Pl.'s Facts ¶ 5. Nor was it the first time that plaintiff's Silverado had been repossessed. Pl's. Facts ¶ 6; Kristi Dep., Xtreme's Ex. F, Dkt. No. 42-6 at 14:23–15:3, 15:7–16:3, 16:18–17:22. Upon seeing the tow truck, Kristi proceeded to alert her husband, who was working elsewhere in the building. Pl.'s Facts ¶ 7.

It is undisputed that when Kristi first spotted Powers, he had already backed the tow truck into the parking lot of plaintiff's business. But how far along Powers was in terms of hooking plaintiff's vehicle to the tow truck before plaintiff attempted to intervene is in dispute. Powers claims that he backed his truck in, verified it was the correct vehicle, lowered the tow truck bed, and quickly hooked it up to plaintiff's truck before any objections were made. Powers Dep., Dkt. No. 42-8 at 27:2–28:15. By contrast, plaintiff's version of events is that the vehicle was not hooked up when he attempted to intervene. Marriott Dep., Pl.'s Ex. B, Dkt. No. 49-2 at 24:3–7 ("Q: Is it your testimony that when you came outside that your vehicle was not hooked to the tow truck? A: Definitely not.")

Kristi testified that when she first walked outside, the repossession agent was hooking the truck up. Kristi Dep., Pl.'s Ex. A, Dkt. No. 49-1 at

21:3–11. When asked whether, at that time, the agent was attaching a cable to the vehicle's underside to hook the truck to the flatbed, Kristi testified that he was. *Id.* at 21:12–14. Kristi testified that when she came outside, she was unsure if the flatbed was extended but that she thought "it probably was extended at the time." Pl.'s Facts ¶ 9; Kristi Dep. at 115:9–13. However, plaintiff has also filed a post-deposition declaration from Kristi stating that when she came outside, the agent was "getting out of his vehicle" and that nothing connected his flatbed truck to plaintiff's truck at that time. Kristi Decl., Dkt. No. 49-9 at ¶¶ 13–14.

At some point thereafter, a verbal confrontation ensured between Marriott and Powers during which Powers removed his sweatshirt. Powers contends that plaintiff tried to unhook his truck from the tow truck bed before screaming at him, and that he took his sweatshirt off because he thought plaintiff was going to assault him and did not want to get into an altercation with a sweatshirt on. Powers Dep., Dkt. No. 42-8 at 43:11–44:25. Plaintiff, by contrast, contends that he believed Powers took his sweatshirt off because he was preparing to punch plaintiff. Marriott Dep., Dkt. No. 42-7 at 39:16–40:1.

According to Powers, there were "at least one if not two" surveillance cameras connected to plaintiff's building at the scene because Marriott "pointed them out[.]" Powers Dep., Xtreme Ex. H, Dkt. No. 42-8 at 71:19–25.

Powers observed one of the cameras and contends plaintiff "kept on saying that […] this is all being recorded on cameras." *Id.* at 58:11–13, 72:2–4. But Marriott argues he never intended to utilize any surveillance video. Marriott Decl., Dkt. No. 49-7 ¶ 32.

While Kristi could not recall whether plaintiff told Powers there were surveillance cameras or that the repossession was being recorded, she acknowledged the building had cameras "all over it." Kristi Dep., Pl.'s Ex. A at 41:7–14. Kristi testified "there [were] outside cameras at the time taking video of this." *Id.* at 47:16–17. Indeed, two security cameras on the front of plaintiff's building could surveil the entire parking lot. Pl.'s Facts ¶ 13. At the time of the incident, plaintiff's truck was parked in front of the building's door. *Id.* ¶ 14. According to plaintiff, the cameras were positioned to observe the area where his truck was located at the time of the repossession but that other vehicles in the parking lot obscured his truck from view. Marriot Dep., Pl.'s Ex. B, Dkt. No. 49-2 at 31:19–32:2. Plaintiff argues he reviewed the video footage the day after the repossession and argues that he did not "fail to retain" the footage because it "gets automatically re-recorded after 30 days" and that he was "unaware if the video [could] be downloaded or how to view it on a computer." Pl.'s Facts ¶ 15.

At some point thereafter, plaintiff contends that Powers dropped the flatbed of the tow truck onto his foot. *Id.* ¶ 16. While Xtreme contends that

flatbeds cannot just "drop[,]" Marriott's asserts that it did drop onto his right foot without any warning. *Compare* Marriott Dep., Pl.'s Ex. B, Dkt. No. 49-2 at 35:6–12 *with* Eldred Dep., Dkt. No. 42-9 at 59:1–7. Kristi also testified both to having witnessed the flatbed drop on her husband's foot and hearing him scream. Kristi Dep., Dkt. No. 49-1 at 115:14–16. Nonetheless, at some point, the flatbed was ultimately lowered under the rear tires of plaintiff's truck to take the vehicle. Pl.'s Facts ¶ 18. When this occurred, plaintiff contends he was standing near the rear passenger side of his truck while defendant moved the flatbed towards the truck. Marriot Declaration, Dkt. No. 49–7 at ¶¶ 19–20. After the flatbed allegedly fell on his foot, plaintiff contends Kristi called the police. Marriott Dep., Pl.'s Ex. B at 108:8–13.

There is no dispute that, when Sgt. Kopec arrived in response, Powers conveyed to him that Marriott sought to prevent connection between the flatbed truck and his vehicle. Pl.'s Facts ¶ 22. At that time, Marriott was unhappy and agitated while Powers was calm. Pl.'s Facts ¶ 23. According to Xtreme, their repossession policy is to leave without repossessing if a debtor objects prior to their "vehicle being hooked up or secure" and that if the individual who is having their property repossessed is hostile or acts in a manner suggestive of physical confrontation, they are to leave "provided [the] vehicle is not already hooked up." Defs.' Facts ¶ 25. In this case, Xtreme contends the vehicle was already hooked up and the repossession was

complete before any objection from plaintiff occurred. *Id.* By contrast, plaintiff contends that when he objected, his truck was not hooked up to the flatbed and that it remained this way until Sgt. Kopec arrived on the scene. Pl.'s Facts ¶ 25. In Marriott's view, he acted in a manner sufficient to warrant Powers' departure without having repossessed his vehicle.

**B. <u>Village Defendants' Motion</u>**

Sgt. Kopec is a police officer employed by the Village Police Department. Pl.'s Facts ¶ 1, Dkt. No. 51-9. During the May 16, 2023 repossession at plaintiff's business, Kristi called 911 upon observing the interaction between Powers and her husband. *Id.* ¶ 17. Sgt. Kopec was on duty and arrived on the scene, testifying that he "observed Xtreme's tow truck backed up to [p]laintiff's vehicle" and "the tow truck's bed was open to load the vehicle on." *Id.* ¶¶ 18–19. Plaintiff and Sgt. Kopec dispute whether the tow truck's cable was extended from the tow truck to plaintiff's truck at this point. Sgt. Kopec Dep., Dkt. No. 46-6 at 56:10–56:14. Sgt. Kopec did not testify, however, that when he arrived, the tow truck cable was hooked to plaintiff's truck, only that that the cables were extended out from the tow truck. *Id.* at 56:12–17. According to Sgt. Kopec, Marriott was standing "on the back bed of the tow truck" when he arrived. *Id.* at 56:19–21. Plaintiff argues he was not on the flatbed but rather arguing face-to-face with Powers and that their confrontation had simmered down once Sgt. Kopec arrived.

Marriott Dep, Pl.'s Ex. B., Dkt. No. 51-5 at 10:12–16. Plaintiff contends that Sgt. Kopec then told him he had to let Powers take his truck or he could be arrested for obstruction. *Id.* at 11:11–20. While the parties dispute whether plaintiff was ever on the tow truck, Sgt. Kopec contends that once plaintiff complied and got off the flatbed, he was able to ascertain that plaintiff was trying to stop the repossession so he could first contact his lender. Pl.'s Facts ¶ 23. Plaintiff indicated to Sgt. Kopec that Powers lowered the flatbed onto his foot but declined to receive any medical assistance or treatment. Pl.'s Facts ¶¶ 24–25. According to Sgt. Kopec, he did observe "a scuff on [p]laintiff's boot" but no other "indication that he was injured." *Id.* ¶ 26. However, Sgt. Kopec's did testify that plaintiff "may have had a very small, slight limp, but nothing that was really noticeable." Sgt. Kopec. Dep., Dkt. No. 46-6 at 78:21–23.

Sgt. Kopec then spoke to Powers, who provided him with paperwork authorizing Xtreme to repossess plaintiff's vehicle. Pl.'s Facts ¶ 27. When asked by Sgt. Kopec, Powers denied dropping the flatbed on plaintiff's foot. *Id.* ¶ 28. Upon reviewing Powers' paperwork, Sgt. Kopec contends he proceeded to advise Marriott not to touch the tow truck's controls or get on the tow truck and that doing so "could result in charges." *Id.* ¶ 29. At no point during the incident did Sgt. Kopec arrest or otherwise detain plaintiff, but plaintiff did continue to object to the repossession even after Sgt. Kopec's

arrived. *Id.* ¶¶ 32, 33. Powers proceeded to complete the repossession of the vehicle while plaintiff remained in the vicinity of the parking lot. *Id.* ¶¶ 34–35. Sgt. Kopec argues he remained on the scene "solely to keep the peace." *Id.* ¶ 36.

According to Sgt. Kopec, plaintiff repeatedly stated that he had surveillance cameras on the property and that everything "was being recorded." *Id.* ¶ 39. The Village Defendants contend that plaintiff told Powers he would use this footage as evidence to "sue him over the repossession." *Id.* ¶ 40. The Village Defendants, as it pertains to vehicle repossessions, contend that the role of a Village police officer called to the scene "is limited to keeping the peace with the goal of maintaining public order and safety, and that unless a chargeable offense or breach of the peace has occurred, the matter is considered a civil dispute." *Id.* ¶ 50. And it is left to the discretion of the responding police officer, based upon their own observations and investigation of the scene, to determine whether a breach of the peace has occurred. *Id.* ¶ 52. Sgt. Kopec contends that he did not observe Powers either threaten or use force against plaintiff at any point in time.[4] *Id.* ¶ 53

[4] Plaintiff did not address this in their responsive facts in opposition. *See* Pl.'s Facts, Dkt. No. 51-9.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 686 (2d Cir. 2023) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017)).

A fact is "material" where it "might affect the outcome of the suit under the governing law." *Hilton v. Wright*, 928 F. Supp. 2d 530, 544 (N.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In reviewing the motion, the district court must 'draw all reasonable inferences against the party whose motion is under consideration.'" *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F. Supp. 3d 208, 215 (N.D.N.Y. 2024) (quoting *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022)). But "[a] question of material fact does not exist merely because plaintiff disagrees with the deposition testimony and documentary evidence produced by defendant[s]." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 131 (E.D.N.Y. 2023) (citing *Anderson*, 477 U.S. at 247–48).

After a moving party carries its burden under Rule 56(c), its opponent then "must provide more than conclusory allegations … and show more than some metaphysical doubt as to the material facts." *See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 85 (2d Cir. 2025) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 20210)). Instead, "[t]he non-moving party 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Murrell v. Moscicki*, 790 F. Supp. 3d 213, 220 (W.D.N.Y. 2025) (quoting *Brown v. Eli Lilly & Co.*, 654 F.4d 347, 358 (3d Cir. 2011)). "Indeed, 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Campbell v. Belgard*, 765 F. Supp. 3d 234, 241 (W.D.N.Y. 2025) (quoting *Anderson*, 477 U.S. at 247–48).

"In sum, the ultimate test 'is whether the evidence can reasonably support a verdict in plaintiff's favor.'" *Waltman v. United Servs., Inc.*, 635 F. Supp. 3d 86, 98–99 (D. Conn. 2022) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Waltman*, 635 F. Supp. 3d at 99 (quoting *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015)).

## IV. DISCUSSION

Plaintiff brings claims for violations of and conspiracy to violate his Fourth, Fifth and Fourth Amendment rights under the U.S. Constitution against the Village Defendants pursuant to § 1983 and violations of the FDCPA and UCC § 9-609 against Xtreme. Dkt. No. 1. Defendants have moved for summary judgment. Dkt. Nos. 42, 46. Stated briefly, plaintiff contends that the Village violated his rights by failing to properly train police officers on how to respond to repossessions and that Sgt. Kopec violated his rights by threatening his arrest and facilitating the repossession ever after he had validly objected to it.[5] *Id*. Plaintiff also contends that the defendants "conspired to subject the plaintiff to the deprivation" of his constitutional rights. *Id*.

The Village Defendants argue that: (1) dismissal is warranted because plaintiff intentionally destroyed material video evidence of the repossession; (2) plaintiff has failed to demonstrate any state action to substantiate a Fourteenth Amendment violation under § 1983; (3) plaintiff's claims against the Village fail under *Monell*; (4) plaintiff's conspiracy claims must be

[5] As discussed in further detail *infra*, plaintiff also brings a claim for conspiracy to violate his constitutional rights against the Village Defendants. But plaintiff's complaint is not a model of clarity as to the basis for that claim, and he has not bolstered or expanded on that claim in his subsequent filings in response to the instant motions.

dismissed; and (5) Sgt. Kopec is entitled to qualified immunity. Village Defs.' Mem., Dkt. No. 46-14 at 10–24.

Plaintiff has opposed. Dkt. No. 51. He argues that: (1) he did not engage in spoliation of evidence; (2) his *Monell* claim against the Village should survive summary judgment because the Village's policy with respect to repossessions made constitutional violates, such as those alleged here, a "highly predictable consequence"; (3) he has demonstrated state with respect to Sgt. Kopec because defendant misstated the law of repossession, threatened him with arrest if he did not turn over his vehicle, and went beyond serving the "benign" peacekeeping function he was supposed to serve; and (4) Sgt. Kopec is not entitled to qualified immunity because there remains a genuine issue of material fact as to whether he knowingly violated plaintiff's constitutional rights. Pl.'s Opp'n, Dkt. No. 51-10 at 3–14. Plaintiff did not address the Village Defendants' arguments regarding dismissal of his conspiracy claim in his opposition papers. *See generally id.*

In response, the Village Defendants argue that: (1) plaintiff's spoliation of evidence warrant dismissal; (2) the post-deposition declarations plaintiff filed rely upon new facts which controvert their deposition testimony and should be disregarded; (3) plaintiff fails to identify any deficiencies in the Village's policies or training; (4) plaintiff has failed to demonstrate any state action because Powers had already repossessed the vehicle before Sgt. Kopec

arrived at the scene; and (5) Sgt. Kopec is entitled to qualified immunity because he did not aid in the repossession and thus did not violate plaintiff's constitutional rights. Village Defs.' Reply, Dkt. No. 52-1 at 5–14. The Village Defendants also argue that because plaintiff's opposition papers fail to address the conspiracy claim, it should be deemed abandoned and summary judgment granted as to that claim. *Id*. at 5.

Plaintiff also brings claims against Xtreme for violations of the FDCPA and New York's UCC. Dkt. No. 1. In sum, plaintiff contends that Xtreme violated the FDCPA where they repossessed his vehicle despite his objections to such an extent that there was a breach of the peace. *Id*. And by committing a breach of the peace, plaintiff asserts that Xtreme also violated § 9-609 of New York's U.C.C., which only allows for repossession without judicial process where there is not a breach of the peace. *Id*.

Xtreme has also moved for summary judgment. Dkt. No. 42. Like the Village Defendants, Xtreme seeks dismissal on the basis of plaintiff's spoliation of evidence. Xtreme's Mem, Dkt. No. 42-12 at 8–11. Xtreme also argues that (1) they did not have violate the FDCPA because they had a present right to the possession of plaintiff's truck by way of an enforceable security interest; (2) there was no breach of the peace because Powers had taken sufficient dominion of plaintiff's vehicle prior to any objection to the

repossession; and (3) plaintiff's § 1983 claims are without merit and fail as a matter of law because the vehicle was lawfully repossessed. *Id.* at 5–15.

Plaintiff has opposed. Dkt. No. 49. Marriott argues that he: (1) did not engage in spoliation of evidence; (2) that Xtreme breached the peace because he objected prior to the repossession, was harmed by Powers during the repossession, and anticipated violence from Powers during the repossession. Pl.'s Opp'n, Dkt. No. 49-10 at 3–10. In response, Xtreme reiterates the need for dismissal based on plaintiff's destruction of video footage and argues that there was no breach of the peace because Powers repossessed the vehicle before plaintiff's objections occurred. Xtreme's Reply, Dkt. No. 50-2 at 5–12.

Because the facts in this case arise from the interaction between plaintiff and Powers, the Court will first analyze Marriott's claims against Xtreme before turning to his claims against the Village Defendants.

### A. **Spoliation of Evidence**

Before addressing the merits of defendants' motions, however, both Xtreme and the Village Defendants request dismissal because of plaintiff's spoliation of evidence, arguing he had a duty to retain and preserve surveillance footage relevant to the repossession but failed to do so. Turning first to Xtreme's arguments, they contend plaintiff intentionally failed to preserve and either destroyed or lost "critical objective video evidence" that was under his control and "central to his claim" and that doing so "after a

clear duty to preserve arose" has "irreparably prejudiced" their capacity to "objectively support its defense." Xtreme's Mem., Dkt. No. 42-12 at 8–9. Xtreme asserts that plaintiff and his wife each testified that the footage captured some or all of the relevant events. *Id*. at 9. Xtreme also contends that permitting a jury at trial to draw inferences from plaintiff's spoliation would be inadequate and unfair considering this evidence might have been dispositive. *Id*. Given this, Xtreme contends they cannot present objective evidence of what occurred during the repossession. *Id*. Thus, they argue that summary judgment is warranted under Rule 37(e). *Id*. at 11.

The Village Defendants' summary judgment motion largely follows Xtreme's position, arguing that: (1) plaintiff had a duty to preserve surveillance footage he knew or should have known would be relevant to litigation; (2) plaintiff intentionally destroyed the evidence in taking no steps to preserve it; (3) the evidence is relevant to this litigation and to their defense; and (4) plaintiff's actions warrant dismissal pursuant to Rule 37(e)(2) because plaintiff intentionally deprived defendants of the footage during litigation. Village Defs.' Mem., Dkt. No. 46-14 at 10–13.

Plaintiff opposes, arguing that the record fails to support a finding that he intentionally deprived defendants of the surveillance footage. Pl.'s Opp'n, Dkt. No. 49-10 at 4. Marriott disputes that he ever pointed out the presence of surveillance cameras or that he threatened Powers with a lawsuit during

the repossession. *Id.* Further, plaintiff contends the footage "had no audio[,]" "did not capture the entire interaction" between Marriott and Powers and did not depict whether or not the Silverado was hooked up to Xtreme's tow truck. *Id.* In plaintiff's view, he took no "affirmative steps to intentionally delete the video surveillance and lacked the required state of mind to find that he intended to deprive [defendants] of the video based on the preponderance of the evidence." *Id.* at 5. In addition, plaintiff asserts spoliation of evidence on Xtreme's part. *Id.* Marriott contends that Xtreme utilized a service enabling video recording from inside of their tow trucks which was active during the repossession and captured the inside of defendant's tow truck cab as well as the surrounding parking lot. *Id.* Plaintiff argues Xtreme purged the video of the incident and only provided four still shots of the incident. *Id.*

The parties are reminded, however, that this federal judicial district, like all other districts, "has well-worn, standard procedures for raising, resolving, and if necessary litigating discovery disputes before the assigned U.S. Magistrate Judge." *Carter v. Cty. of Broome*, 394 F. Supp. 3d 228, 237 (N.D.N.Y. 2019) (citing N.D.N.Y. L.R. 7.1(d)). But discovery is closed in this case and had been for months when the defendants filed their respective summary judgment motions in November of 2025. *See* Dkt. Nos. 36, 42, 46. The same holds true with respect to plaintiff's argument raised in opposition.

Regardless of whether the parties' various arguments about the preservation of video evidence in this matter are meritorious, it is entirely unclear to this Court why those concerns were not raised prior to the September 29, 2025 deadline for discovery motions. Dkt. No. 36. Regardless, a motion for summary judgment is not the place to raise this kind of complaint. For the foregoing reasons, the parties' respective spoliation of evidence arguments will be rejected, and the Court now proceeds to the merits of defendants' remaining arguments.

**B. <u>FDCPA & UCC Claims against Xtreme</u>**

Turning first to Xtreme's motion, plaintiff claims that Xtreme violated 15 U.S.C. §§ 1692f and 1692f(6)(A) of the FDCPA and § 9-609 of New York's UCC. Dkt. No. 1. He argues that once he objected to the repossession of his vehicle, Xtreme was no longer permitted under New York law to repossess the vehicle but nonetheless did so. Dkt. No. 1. Xtreme has moved for summary judgment, arguing no FDCPA violation occurred because they "had a present right to possess the vehicle through an enforceable security interest." Xtreme's Mem., Dkt. No. 42-12 at 12. In support, Xtreme argues that they possessed a valid Order of Repossession when they arrived on plaintiff's property and plaintiff admitted he defaulted on his loan at the time of repossession. *Id.* As a result, "Xtreme had a present right to take possession of the vehicle pursuant to N.Y.U.C.C. § 9-609(b)(2).

Marriott has opposed. Dkt. No. 49. First, he contends Xtreme lacked a valid Order to repossess his vehicle, arguing that nothing in the record establishes that any Court issued such an Order. Pl.'s Opp'n, Dkt. No. 49-10 at 6. Given this, plaintiff asserts that Xtreme only presented "an assignment" from Five Star which lacked any judicial process or approval. *Id*. And given Xtreme lacked judicial process to effectuate the repossession, plaintiff contends they were only permitted to repossess his vehicle in the absence of a breach of the peace. *Id.*

Thus, the issues presently before the Court are: (1) whether Xtreme had a valid present right to possess plaintiff's vehicle at the time that they attempted repossession; and (2) whether Xtreme breached the peace during their efforts to repossess plaintiff's vehicle.[6] In answering these questions with respect to plaintiff's FDCPA claim, the Court will necessarily resolve both of plaintiff's claims against Xtreme¸ *i.e.*, whether the repossession violated the FDCPA and if, in doing so, Xtreme breached the peace in violation of New York's UCC.

And given the intertwined nature of plaintiff's FDCPA and NY UCC claims and before reaching the merits of the parties' arguments, their

---

[6] And as discussed *infra*, this second question is decided based on whether plaintiff validly objected to the repossession and whether that objection was sufficient to put a halt to Xtreme's efforts to retake Marriott's truck. It also hinges on whether violence, or the threat of violence, was discernable during the repossession.

respective breach of the peace arguments are also properly discussed here. Plaintiff contends that Xtreme breached the peace by continuing their efforts to repossess his vehicle after he objected to it. Xtreme contends that prior to plaintiff protesting the repossession, Xtreme had already "gained sufficient dominion over the vehicle." Xtreme's Mem., Dkt. No. 42-12 at 13–14. Moreover, Xtreme contends that even if they had not already repossessed the vehicle before plaintiff arrived on the scene to object, plaintiff has failed to identify "any alleged action" meeting "the New York common law definition of a breach of the peace." *Id.* at 14. Insofar as plaintiff argues that Powers dropped the tow truck's flatbed onto his foot, Xtreme argues that this is contrary to the evidence because it is "mechanically impossible." *Id.* Plaintiff has opposed, arguing that: (1) he and Kristi each objected to the repossession prior to it being hooked up to Xtreme's tow truck; (2) Powers dropped the flatbed on his foot while attempting to repossess the vehicle; (3) Powers removed his shirt "in preparation for a physical encounter with [p]laintiff as they were screaming at one another in close proximity." Pl.'s Opp'n, Dkt. No. 49-10 at 10. As a result, they contend that there was a clear breach of the peace. *Id.*

In response, Xtreme reiterates that they had sufficient dominion over plaintiff's truck before plaintiff arrived to protest the repossession. Xtreme's Reply, Dkt. No. 50-2 at 11. They also take issue with the post-depositions of

plaintiff and his wife, contending that they were prepared for the sole purpose of opposing Xtreme's motion and contradict plaintiff's wife's own deposition testimony along with that of Powers and Sgt. Kopec. *Id.* at 12.

Under the FDCPA, debt collectors are prohibited from the use of "unfair or unconscionable means to collect or attempt to collect any debt, specifically: taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if ... there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. §1692f. A plaintiff successfully makes out an FDCPA violation by showing that (1) they are a consumer who either owed a debt or was he target of efforts to collect a consumer debt; (2) the defendant is a debt collector; and (3) the defendant engaged in conduct that violates the FDCPA requirements." *Hajdasz v. Advance Recovery of N.Y., Inc.*, 2024 WL 2304415, at *3 (N.D.N.Y. May 21, 2024) (citing *Palmer v. Simon's Agency, Inc.*, 2020 WL 1332829, at *3 (N.D.N.Y. Mar. 23, 2020) (cleaned up), *aff'd*, 833 Fed. App'x. 838 (2d Cir. 2020)).

"[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Hajdasz*, 2024 WL 2304415, at *3 (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). As pertinent to § 1692f(6) of the FDCPA, a debt

collector is defined as "includes any person ... in any business the principal purpose of which is the enforcement of security interests." *See* 15 U.S.C. § 1692a(6). § 1692f(6) "applies to repossession agencies, those businesses which are employed by the owner of collateral to dispossess the debtor of the collateral and return it to the owner." *Id.* (quoting *Durandisse v. U.S. Auto Task Force*, 2009 WL 2337133, at *3 (S.D.N.Y. July 30, 2009) (cleaned up)).

Determining whether a debt collector under the FDCPA possessed "' a present right to a vehicle via an enforceable security interest turns on the state's Uniform Commercial Code.'" *Id.* (quoting *Gerbasi v. NU Era Towing & Serv., Inc.*, 443 F. Supp. 3d 411, 413 (W.D.N.Y. 2020) (cleaned up)); *see also Vassel v. Palisades Funding Corp.*, 2020 WL 2797274, at *2 (E.D.N.Y. May 28, 2020) (holding that the failure to establish wrongful repossession precludes liability under the statute).

Finally, pursuant to N.Y. U.C.C. § 9-609, "after a default, 'a secured party may take possession of the collateral' either 'pursuant to judicial process [ ] or without judicial process, if it proceeds without breach of the peace.'" *Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 400 (S.D.N.Y. 2023) (quoting N.Y. U.C.C. § 9-609(a)(1), (b)(1)–(2)). "The New York Court of Appeals has defined a breach of the peace as 'a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of

the community.'" *Labadie v. NU Era Towing and Service, Inc.*, 2023 WL 8708421, at *2 (quoting *People v. Most*, 171 N.Y. 423, 429 (1902)). Put differently, "a breach of the peace 'is an offense which tends to disturb public quiet and peace and interfere with the tranquil[ ]ity which the citizens of a community have a right to enjoy[.]" *Id.* (collecting cases). "New York courts have held, applying the definition established in *Most*, that a lack of consent by the debtor to repossession does not constitute a breach of peace." *Id.* (collecting cases).

New York Courts have not found that a debtor's verbal objections to a repossession, taken alone, is sufficient to find that a breach of the peace occurred. *Id.* However, where a debtor's objections are followed by actions taken by the repossessor which either lead to violence or were likely to lead to violence, New York courts have found that a breach of peace occurred. *Id.* (cleaned up).

As a threshold matter, there is no doubt, nor do the parties dispute, that Xtreme, operating as a repossession agency, is a debt collector as defined under 15 U.S.C. § 1692a. There is also no dispute that plaintiff entered into a loan agreement with Five Star and subsequently defaulted on that loan, nor do the parties dispute that the specified collateral in that loan agreement was plaintiff's Chevrolet Silverado. And Xtreme has included the assignment from Five Star authorizing them to collect this collateral due to Marriott's

default. *See* Xtreme's Ex. A, Dkt. No. 42-1. But as plaintiff argues, there is nothing to show that Xtreme's authorization to repossess was a byproduct of judicial process Thus, the Court finds that at the time of repossession, Xtreme had a right to repossess plaintiff's vehicle so long as they did not commit a breach of the peace. *Garcia*, 665 F. Supp. 3d at 400.

Having reviewed the record, the Court finds several genuine issues of material fact remain as to whether there indeed was a breach of the peace. First, it is unclear whether plaintiff timely objected to the repossession. On one hand, defendant contends that he had sufficient dominion over the vehicle before plaintiff ever objected.[7] *See* Powers Dep., Dkt. No. 42-8 at 27:25–28:3. On the other, plaintiff contends that defendant had only backed into the parking lot to align the tow truck with plaintiff's vehicle. *See* Marriott Dep., Dkt. No. 49-2 at 24:3–7. With respect to plaintiff's claims against Xtreme, this issue must first be resolved first by a trier of fact, and the Court acknowledges that the remaining issues of fact are only relevant where this issue is resolved in plaintiff's favor.

But given that the first issue remains unresolved, there remains a genuine factual dispute as to whether there was a threat of violence leading up to the repossession that would have constituted a breach of peace.

[7] And insofar as Xtreme relies on the testimony of Sgt. Kopec to demonstrate that the truck was hooked up prior to plaintiff objecting, that is another question of fact as it is unclear when Sgt. Kopec arrived relative to plaintiff's having first objected.

Plaintiff contends that, at some point after he had started his objection to the repossession, he and Powers were screaming in each other's faces in close proximity and that Powers took his sweatshirt off, giving plaintiff the impression a physical altercation would ensure. Marriott Dep., Dkt. No. 42-7 at 39:16–40:1. Defendant, by contrast, argues that he anticipated violence and the vehicle was already in his control before plaintiff ever objected. Powers Dep., Dkt. No. 42-8 at 43:11–44:25.

Further, it remains unclear whether Powers lowered the bed of the tow truck onto plaintiff's foot. *Supra.* Assuming this happened before Xtreme took control of the vehicle, the Court finds this could have constituted violence to make out a breach of the peace. While plaintiff and his wife contend that this did occur and that plaintiff screamed in pain, Xtreme argues it could not have happened both because it is not mechanically possible and because plaintiff was not standing in a location where the injury could have occurred. Marriott Dep., Dkt. No. 49-2 at 35:6–12; Eldred Dep., Dkt. No. 42-9 at 59:1–7; Kristi Dep., Dkt. No. 49-1 at 115:14–16.

In light of these issues of material fact, the Court cannot resolve on summary judgment whether a breach of the peace occurred to determine whether Xtreme violated the FDCPA or the NY U.C.C., and these issues are best reserved for the trier of fact. Accordingly, Xtreme's request to dismiss plaintiff's FDCPA and NYUCC claims will be denied.

Before turning to plaintiff's § 1983 claims, the Court turns to one housekeeping matter. Xtreme's motion for summary judgment also argues that plaintiff's § 1983 claims should be denied against them as a matter of law, however, plaintiff's complaint makes clear that these claims were only brought against the Village Defendants. *See* Dkt. No. 1. Accordingly, these claims will only be addressed *infra* as to the Village Defendants.

### C. <u>§ 1983 Claims against the Village Defendants</u>

Turning now to the Village Defendants' motion, plaintiff alleges that they violated and conspired to violate his Fourth, Fifth, and Fourteenth Amendment rights. The Village Defendants now seek dismissal of these claims. First, they argue that Sgt. Kopec arrived only after the repossession was effectuated and no police intervention was required that could be construed as state action in violation of the Fourteenth Amendment. Village Defs.' Mem., Dkt. No. 46-24 at 16. Next, the Village Defendants assert that even if Xtreme had not repossessed the vehicle when Sgt. Kopec arrived at the scene, he still did not assist in the repossession. *Id*. While plaintiff alleges that Sgt. Kopec threatened to arrest him if he interfered in the repossession, Sgt. Kopec contends that when he arrived at the scene, plaintiff was standing on top of the tow truck trying to stop the repossession. *Id*. Sgt. Kopec asserts that he advised plaintiff that he could not physically interfere with the repossession of his vehicle. *Id*. Thus, Sgt. Kopec contends that he

acted within his role as a law enforcement officer by informing him he could be arrested for physically touching or getting on the tow truck as plaintiff lacked the legal authority to do so. *Id*. at 17.

Plaintiff has opposed. Dkt. No. 51. He contends that he and his wife opposed the repossession before his vehicle was hooked up to the tow truck, but that when Sgt. Kopec arrived, he nonetheless threatened plaintiff with arrest and/or obstruction charges unless he surrendered his vehicle. Pl.'s Opp'n, Dkt. No. 51-10 at 10. Plaintiff claims this instilled a fear of arrest that led him to surrender his keys. *Id*. at 10,12. Plaintiff contends that because he opposed the repossession before the vehicle was hooked up, all subsequent action constituted a breach of the peace. *Id*. at 11. Because the repossession did occur, plaintiff asserts that Sgt. Kopec misstated or misapplied the New York repossession law. *Id*. at 11–12. In light of this, plaintiff argues that Sgt. Kopec went beyond any "benign, peacekeeping function[.]" *Id*. at 12.

**1. State Action Claims against Sgt. Kopec**

The Court turns first to plaintiff's claims against Sgt. Kopec. "The Fourteenth Amendment of the Constitution safeguards a citizen's right not to be deprived of property by any state without due process of law, and the Amendment is violated only 'by conduct that may be fairly characterized as "state action."'" *Barrett v. Harwood*, 189 F.3d 297, 301 (2d Cir. 1999) (quoting

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)). "To establish a deprivation of property, a plaintiff must show that a person acting under color of any state statute, regulation, custom or usage deprived plaintiff of a right secured by the Constitution." *Id.* (citing § 1983) As it pertains to § 1983 actions against "the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." *Id.* (quoting *Lugar*, 457 U.S. at 929).

In *Barrett*, the Second Circuit analyzed "a spectrum of police involvement at the scene of a repossession." *Id.* at 302. On one end of this spectrum is *de minimis* police involvement that does not amount to state action in aid of a repossession. *Id.* As an example, the Court found that a police officer's mere presence at the scene is insufficient to constitute state action. *Id.* (citing *Wright v. Nat'l Bank of Stamford*, 600 F. Supp. 1289, 1295 (N.D.N.Y. 1985), *aff'd* 767 F.2d 909 (2d Cir. 1985); *U.S. v. Coleman*, 628 F.2d 961, 963 (6th Cir. 1980) (finding no state action where police were parked nearby scene of repossession on standby in case of trouble)).

Further along the spectrum, even where a police officer's involvement goes beyond mere presence, it can still be found insufficient to constitute state action that aids repossession. *Barrett*, 189 F.3d at 302 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510–515 (5th Cir. 1980) (finding no state action where an officer informed the debtor that repossession was a civil

matter in which they only serve to quiet a reported disturbance and where the debtor alleged that one officer said she would arrest the debtor if he didn't turn over keys to the repossessor)).

But where "an officer begins to take a more active hand in the repossession, and as such [their] involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action." *Id.* The Second Circuit found that other circuit courts, faced with similar sets of facts, either found state action or that the issue properly survived at the summary judgment stage. *See id.* (collecting cases).

In light of this spectrum, the *Barrett* court found that the appropriate question to be "whether the police officer was (1) present simply to stand by in case there was a breach of the peace, (2) taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession." *Id.*

Upon review, there is a factual dispute as to plaintiff's conduct when Sgt. Kopec arrived on the scene. The Village Defendants contend plaintiff was standing on top of the tow truck's flat bed. Sgt. Kopec. Dep., Dkt. No. 46-6, at 56:19–21. Plaintiff denies this, contending he was instead engaged in a face-to-face confrontation with Powers at the time. Marriott Dep, Pl.'s Ex. B.,

Dkt. No. 51-5 at 10:12–16. Accordingly, the parties dispute whether Sgt. Kopec ever ordered plaintiff off the tow truck. The parties also dispute whether, when Sgt. Kopec arrived, the tow truck was repossessed. Sgt. Kopec argues that once plaintiff got off the flatbed, he ascertained that a repossession was underway that plaintiff sought to halt. Pl.'s Facts ¶ 23. Plaintiff told Sgt. Kopec that Powers lowered the flatbed onto his foot. *Id.* ¶¶ 24–25. Although plaintiff's declined medical treatment, Sgt. Kopec observed scuffing on plaintiff's boot and testified that plaintiff may have had a small or slight limp. *Id.* ¶¶ 24–26.

Sgt. Kopec then spoke to Powers and reviewed his authorization to repossess the truck. *Id.* ¶ 27. Powers denied dropping the flatbed on plaintiff's foot when asked. *Id.* ¶ 28. Sgt. Kopec contends he advised Marriott not to touch the tow truck's controls or get on the tow truck and that doing so could lead to charges. Pl.'s Facts ¶ 29. But plaintiff contends that Sgt. Kopec's orders were instead to surrender his keys or otherwise be charged with obstruction. Sgt. Kopec Dep., Dkt. No. 51-5 at 11:11–20. Sgt. Kopec never arrested or detained plaintiff and Marriott continued his objections to the repossession, which was subsequently completed.

Upon review, and in part for the reasons discussed *supra* as to why Xtreme's motion must be denied, there remain genuine issues of material fact which preclude granting the Village Defendants' motion to dismiss plaintiff's

state action claim against Sgt. Kopec. The parties' disputes as to whether plaintiff was harmed and whether the lowering of the tow truck's flatbed onto plaintiff's foot are likely dispositive as to the issue of whether this matter was responded to properly. And in the event that a trier of fact was to conclude that plaintiff was harmed or that there was a threat of violence, it could support finding that a breach of the peace had occurred. While there is no showing that Sgt. Kopec acted in concert with Xtreme or Powers, there is a dispute as to whether Sgt. Kopec obstructed plaintiff's ability by threatening him with arrested such that he was unable to further object to the repossession such that Sgt. Kopec helped to facilitated the repossession.[8] Without having resolved these genuine issues of material fact, the Village Defendants' motion to dismiss plaintiff's constitutional claims against him will be denied.

**2. Village Liability**

Turning next to plaintiff's claim against the Village, he contends that, with respect to repossessions, the Village and/or its police department implemented policies and customs including the failure to supervise, monitor, or train police officers to monitor, supervise, handle, and respond to disputes or potential disputes. Dkt. No. 1. Marrott alleges that the Village failed to

[8] The Court acknowledges, however, that this could only be possible in the event that Xtreme had not already completed the repossession.

make clear to police officers that they should not "threaten charges to the owner of an automobile solely because of his refusal to voluntarily surrender the vehicle to a repossession and/or actively assist the repossession agent" in taking the vehicle. *Id.* Thus, plaintiff contends the allegedly unconstitutional action taken by Sgt. Kopec was done pursuant to the Village's policies and customs. *Id.* In the alternative, plaintiff alleges that, even if the Village's policies and customs were constitutionally valid, they are still liable for their failure to properly train, supervise, or discipline their employees. *Id.*

The Village has moved for summary judgment, arguing that plaintiff fails to set forth facts to support finding there was any unconstitutional policy or custom in effect. Village Defs.' Mem, Dkt. No. 46-14 at 18. They also contend that plaintiff fails to make out a breach of peace claim because merely asserting that he objected to a repossession is insufficient. *Id.* Further, they assert that Sgt. Kopec did not aid in the repossession of plaintiff's vehicle. *Id.* at 19. The Village also argues that it does not maintain any written policy with respect to repossessions, instead complying with state and federal law in treating such matters as civil disputes unless there has been a breach of peace. *Id.* Absent this, they contend that an officer arrives at the scene of a repossession only to keep the peace. *Id.*

The Village also takes issue with plaintiff's claims that they failed to adequately train police officers. They contend every Village police officer must, at a minimum, complete New York's basic training program and field training, and that this includes how to determine whether a breach of the peace has occurred. *Id*. With respect to Sgt. Kopec, they argue he has attended multiple trainings throughout his employment regarding the "understanding and characterization of breach of peace." *Id*. at 19–20. Finally, the Village asserts that plaintiff has not raised any specific deficiencies with respect to either their training requirements or the actual training Sgt. Kopec received. *Id*. at 20.

Plaintiff also argues the Village failed to train its officers about what constitutes a breach of the peace and that "the admonition that they never become involved in civil disputes" made it a "highly predictable consequence" that constitutional violations would ensue. Pl.'s Opp'n at 8.

To bring a § 1983 claim for municipal liability, *i.e.,* a *Monell* claim, a plaintiff "must plausibly allege" that "an official policy or custom" existed which "caused him to be denied a constitutional right." *Hillman v. City of Oswego*, 2026 WL 35505, at *6 (Jan. 6, 2026) (quoting *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 138 (N.D.N.Y. 2024) (cleaned up). In the context of § 1983, municipalities are considered to be persons. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Further, under § 1983, a municipality

cannot be held vicariously liable for the constitutional torts of their employees nor liable under a theory of respondeat superior. *Id.* at 691 (emphasis added); *see also Faggins v. McDole*, 2025 WL 2933529 at *6 (N.D.N.Y. July 10, 2025).

It is instead "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "[T]he Supreme Court has recognized that *Monell* liability may be established through: (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Thomas*, 711 F. Supp. 3d at 139 (quoting *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y 2020) (cleaned up)). "[B]oilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support these statements, are not sufficient to support a *Monell* claim." *Id.* (quoting *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023)).

While plaintiff need not "show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Raymond v. Bunch*, 136 F. Supp. 2d 71, 77 (N.D.N.Y. 2001) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (cleaned up). "'The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges' that its agents were violating citizens' constitutional rights." *Raymond*, 136 F. Supp. 2d at 77 (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61–62 (2d Cir.1998) (cleaned up)).

Upon review, plaintiff has not set forth any evidence that a specific policy implemented by the Village existed with respect to repossessions. And he has not offered any evidence that the Village failed to train its employees such that this Court could find a deliberate indifference to the constitutional rights of those within its jurisdiction. Nor has he presented any evidence that the City, knowing that its constitutional policy could be unconstitutionally applied in the context of repossessions, failed to act or train its employees to mitigate violations. Indeed, plaintiff has not presented

any other comparable incidents to give rise to such an awareness on the part of the Village. And insofar as plaintiff argues that the Village's adoption of a certain course of action—in this case having police officers not engage and solely maintain the peace where the matter is a civil dispute—constitutes a policy, that policy is not inconsistent with state law. *See* N.Y. U.C.C. § 9-609(b)(2).

Rather, this case centers around a single incident between the plaintiff and Powers where there is an open question of fact as to whether it should have been treated as than a civil dispute, *i.e.* whether a violent act, or the threat of a violent act, had occurred to give rise to Sgt. Kopec treating the matter as more than a civil dispute. In addition, there is a question of fact as to whether Sgt. Kopec threatened plaintiff with arrest because he was standing on the tow truck or to facilitate repossessions. But plaintiff has not made no showing that the Village was liable due to an unconstitutional policy or failure to train. Accordingly, the Village's motion for dismissal of plaintiff's claims against the Village for Constitutional violations will be granted.

**3. Plaintiff's Conspiracy Claims**

Plaintiff has also alleged that the Village Defendants conspired to violate his Fourth, Fifth, and Fourteenth Amendment rights. Dkt. No. 1. But Marriott has not presented any facts in support of that argument in his

briefing, let alone specify who the conspiracy was between, or otherwise respond to the Village Defendants' motion regarding this claim. The Village Defendants, taking the position that plaintiff intended to allege that Sgt. Kopec conspired with Powers to violate his rights, nonetheless contend that the contact between he and Powers was minimal. *See* Village Defs.' Mem, Dkt. No. 46-14 The Court agrees, finding that the only meaningful contact between the two was when Sgt. Kopec, upon arriving at the scene, confirmed that Powers had authorization to repossess the vehicle and that he did not drop the flat bed on Marriott's foot. This conclusion is not diminished by the fact that it was Kristi, not Powers, who called 911 for a response to the scene. Given that plaintiff has done nothing to clarify this claim in his opposition briefing, the Court finds no basis to conclude otherwise. Accordingly, the Village Defendants' request to dismiss plaintiff's claim of conspiracy to commit constitutional violations will be granted.

**4. Qualified Immunity**

The Village Defendants have also requested that plaintiff's claims against Sgt. Kopec be dismissed on the basis of qualified immunity. Village Defs.' Mem, Dkt. No. 46-14 at 22–24. They argue that: (1) Sgt. Kopec was not dispatched to the scene until Powers took physical control of the vehicle; (2) upon arriving, Sgt. Kopec observed plaintiff standing on the tow truck which was hooked to plaintiff's vehicle; (3) Sgt. Kopec instructed plaintiff to

get off the tow truck and threatened arrest on that basis; and (4) after interviewing Powers, plaintiff, and Kristi, he was merely on the scene to keep the peace. *Id.* at 24.

In opposition, plaintiff contends that: (1) the only discussion that occurred on the scene was plaintiff's surrender of his vehicle pursuant to Sgt. Kopec's threat of arrest/obstruction charges; and (2) Sgt. Kopec was actively involved in the repossession and "intentionally intimidated [p]laintiff to prevent him from exercising his constitutional rights." Pl.'s Opp'n, Dkt. No. 51-10 at 12–13.

"Qualified immunity 'is an affirmative defense on which [Defendants have] the burden of proof.'" *McNamara v. Cnty. of Saratoga*, 748 F. Supp. 3d 68, 103 (N.D.N.Y. 2024) (quoting *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018)). On a motion for summary judgment, qualified immunity is determined "using a two-part inquiry that asks: "(1) 'whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a federal right' and (2) 'whether the right in question was clearly established at the time of the violation.'" *Id.* (quoting *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam)). The Court has discretion to decide which of these prongs to decide upon first. *Id.* at 103–104. (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). However, under either prong, Court

cannot "resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656.

In this case, the arguments upon which Sgt. Kopec relies upon are the very issues that constitute genuine disputes of fact in this case. Namely, there is a genuine dispute as to whether the repossession had been completed when he arrived and whether plaintiff had been either harmed or threatened with violence. There is also a genuine dispute as to the reason why Sgt. Kopec threatened the plaintiff with arrest. Viewing all facts in a light most favorable to plaintiff, one could find that Sgt. Kopec's conduct facilitated a repossession that otherwise should have been terminated once a breach of the peace had occurred. Accordingly, Sgt. Kopec's argument that he is entitled to qualified immunity will be denied.

## V. CONCLUSION

For the foregoing reasons, Xtreme's motion for summary judgment will be denied and the Village Defendants' motion for summary judgment will be granted in part and denied in part. The Village Defendants' request to dismiss plaintiff's § 1983 state action claim against Sgt. Kopec will be denied but their requests to dismiss plaintiff's § 1983 claim against the Village for failure to train and deliberate indifference as well as his conspiracy to commit constitutional violations claim against the Village and Sgt. Kopec will

be GRANTED. Finally, their request that Sgt. Kopec be dismissed pursuant to the doctrine of qualified immunity will be DENIED.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss plaintiff's complaint and/or for any other sanctions for plaintiff's spoliation of evidence in violation of Rule 37(e) are DENIED;

2. Insofar as plaintiff requests sanctions against Xtreme pursuant to Rule 37(e) for spoliation of evidence, that request is DENIED;

3. The Village Defendants' motion to dismiss plaintiff's § 1983 claims of state action in violation of his Fourth, Fifth, and Fourteenth Amendment rights against Sgt. Kopec is DENIED;

4. The Village Defendants' motion to dismiss plaintiff's § 1983 claims for failure to train and/or deliberate indifference in violation of his Fourth, Fifth and Fourteenth Amendment rights against the Village is GRANTED;

5. The Village Defendants' motion to dismiss plaintiff's § 1983 claim for conspiracy to violate his Fourth, Fifth and Fourteenth Amendment rights as to both the Village and Sgt. Kopec is GRANTED;

6. Xtreme's motion to dismiss plaintiff's claim of violations of the FDCPA is DENIED;

7. Xtreme's motion to dismiss plaintiff's claim of violations of New York U.C.C. § 9-609 is DENIED;

8. The Village Defendants request for qualified immunity as to Sgt. Kopec with respect to plaintiff's surviving claims against him is DENIED; and

9. The Village is hereby terminated from this action. The surviving parties shall file a joint status report in THIRTY DAYS from the date of this opinion advising the Court of trial readiness and whether a settlement conference before the magistrate judge might be fruitful.

The Clerk of the Court is directed to terminate the pending motions, terminate the Village as a defendant, and set a deadline accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: August 25, 2026
Utica, New York.